UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY J. MILLS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | No. 2:13-cv-0899-KJN<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from September 14, 2008, through the date of the ALJ's decision.  (ECF No. 16.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 19.)  No optional reply brief was filed by plaintiff.

////

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 9, 11.)

1

After carefully considering the entire record and the parties' briefing, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.     BACKGROUND

Plaintiff was born on January 19, 1987, obtained a GED, is able to communicate in English, and previously worked primarily as a welder and metal fabricator.[2]  (Administrative Transcript ("AT") 17, 24, 48-51.)  At the age of 22, plaintiff applied for DIB on July 13, 2009, and SSI on August 25, 2009, alleging that he was unable to work as of September 14, 2008, due to diabetes and a knee injury.  (AT 60-63, 162, 164, 175.)  On November 17, 2009, the Commissioner determined that plaintiff was not disabled.  (AT 64-67.)  Upon plaintiff's request for reconsideration, that determination was affirmed on May 26, 2010.  (AT 69-73.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on February 15, 2011, and at which plaintiff, represented by a non-attorney representative, testified. (AT 44-59.)  At that time, the ALJ referred plaintiff for a further ophthalmology consultative examination (AT 58-59), and a supplemental hearing was conducted on July 29, 2011.  (AT 31-43.)

In a decision dated September 21, 2011, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from September 14, 2008, plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (AT 11-25.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 25, 2013.  (AT 1-5.)  Thereafter, plaintiff filed this action in federal district court on May 7, 2013, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

////

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

II.   ISSUES PRESENTED

In this court, plaintiff raises the sole issue of whether the ALJ failed to provide legally sufficient reasons for rejecting the opinion of plaintiff's treating physician, Dr. David Short.

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.   DISCUSSION

A.   Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3]  As an initial matter, the ALJ found that plaintiff met

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

3

the insured status requirements of the Act for purposes of DIB through June 30, 2010. (AT 13.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since September 14, 2008, plaintiff's alleged disability onset date. (Id.) At step two, the ALJ determined that plaintiff had the following severe impairments: insulin-dependent diabetes mellitus, intermittent right knee strain, and intermittent acute infections. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 17.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is precluded from climbing ladders, ropes, or scaffolds. He can occasionally climb stairs and ramps.

(AT 18.) At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (AT 24.) Finally, at step five, the ALJ determined, in reliance on the Grids, that considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (AT 25.) The ALJ noted that,

---

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

1  because the minimal postural limitations in the RFC did not significantly erode the base of light
2  work, it was appropriate to rely on the Grids at step five.  (Id.)
3        Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined
4  in the Act, from September 14, 2008, plaintiff's alleged disability onset date, through September
5  21, 2011, the date of the ALJ's decision.  (AT 25.)
6        B.      Plaintiff's Substantive Challenges to the Commissioner's Determinations
7        Plaintiff's sole argument for reversal is that the ALJ improperly discounted the opinion of
8  plaintiff's treating physician, Dr. David Short, regarding plaintiff's physical limitations.[4]  For the
9  reasons discussed below, that argument is unpersuasive.
10        The weight given to medical opinions depends in part on whether they are proffered by
11  treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195,
12  1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more
13  weight is given to the opinion of a treating professional, who has a greater opportunity to know
14  and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir.
15  1996).
16        To evaluate whether an ALJ properly rejected a medical opinion, in addition to
17  considering its source, the court considers whether (1) contradictory opinions are in the record;
18  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a
19  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81
20  F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be
21  rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating
22  professional's opinion generally is accorded superior weight, if it is contradicted by a supported
23  examining professional's opinion (supported by different independent clinical findings), the ALJ
24  may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

---

[4] In the course of the administrative proceedings below, plaintiff also alleged certain mental impairments.  However, because plaintiff has not in his brief before this court alleged any specific error regarding the ALJ's assessment of plaintiff's mental impairments or mental functional limitations, any such issue is deemed waived.

1  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to
2  weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ
3  in any event need not give it any weight if it is conclusory and supported by minimal clinical
4  findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory,
5  minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a
6  non-examining professional, without other evidence, is insufficient to reject the opinion of a
7  treating or examining professional. Lester, 81 F.3d at 831.

8      Here, plaintiff's treating physician, Dr. Short, on July 21, 2011, completed a two-page
9  medical source statement listing plaintiff's diagnoses as type 1 diabetes and neuropathy. (AT
10 429-30.) Dr. Short opined that plaintiff could lift/carry 20 pounds occasionally and 10 pounds
11 frequently; stand and walk about 2 hours total in an 8-hour workday; and sit about 4 hours total in
12 an 8-hour workday. (AT 429.) Plaintiff could sit for 60 minutes before needing to change
13 position; could stand for 10 minutes before needing to change position; but also needed to walk
14 around every 15 minutes for 5 minutes each time, and needed to shift at will from sitting or
15 standing/walking. (Id.) Dr. Short further stated that plaintiff could occasionally twist,
16 stoop/bend, and crouch, but never climb stairs or ladders. (Id.) He also indicated that plaintiff's
17 ability to feel and push/pull would be affected by the neuropathy in his legs, imposed certain
18 environmental restrictions, and opined that plaintiff would be absent from work more than 3 times
19 per month. (AT 430.)

20     In this case, the ALJ provided several specific and legitimate reasons for discounting Dr.
21 Short's relatively severe opinion.

22     The ALJ reasonably found that Dr. Short's assessment was not supported by his own
23 treatment records or other evidence of record. (AT 24.) As an initial matter, the cursory and
24 conclusory two-page medical source statement itself contained no clinical findings or rationale in
25 support of the severe limitations assessed, even though the form specifically requested such

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

1 information. (AT 429-30.)[6] See Meanel, 172 F.3d at 1114 (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. Furthermore, although plaintiff's treatment records and laboratory tests confirmed his longstanding type 1 diabetes and included several references to neuropathy, the records contained no objective test results or other clinical findings to corroborate Dr. Short's diagnosis of severe peripheral neuropathy (to which the extensive assessed limitations involving plaintiff's legs and feet are ostensibly attributable). As the ALJ observed, Dr. Short's treatment notes do not document any specific clinical findings from a neurological examination, such as sensation loss in the lower extremities, and Dr. Short did not order any electrodiagnostic testing. (AT 23.)[7]

The ALJ also correctly observed that Dr. Short's opinion was inconsistent with, and vastly different from, all the other medical opinions in the record. (AT 24.)

On September 8, 2009, plaintiff was evaluated by board certified internal medicine physician Dr. Sandra Eriks, who personally examined plaintiff, ordered an x-ray of his right knee, and reviewed his medical records. (AT 258-65.) Plaintiff's chief complaints were noted to be a right knee injury and type 1 diabetes. (AT 258.) Upon physical examination, plaintiff had no tenderness, warmth, or erythema of any joints; no clubbing, cyanosis, or edema in any extremity;

---

[6] Notably, although not specifically mentioned by the ALJ, some of Dr. Short's assessed limitations also appear inconsistent. For example, although he found plaintiff capable of sitting for 60 minutes before needing to change position, he also inexplicably indicates that plaintiff had to shift at will between sitting and standing/walking, and had to walk every 15 minutes for 5 minutes each time. (AT 429.) Such inconsistencies, in addition to the ALJ's stated reasons, further bolster the ALJ's decision to discount Dr. Short's opinion. See Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) ("Insofar as the ALJ rejected the opinions expressed by Dr. Lafrance, the inconsistencies and ambiguities noted by the ALJ represent specific and legitimate reasons for doing so.").

[7] In his brief, plaintiff argues that Dr. Short likely did not request electrodiagnostic or other testing, because plaintiff did not have health insurance coverage and could not afford such testing. However, the ALJ's decision plainly shows that the ALJ had adequately taken such concerns into account: "The undersigned is aware that the claimant lacked insurance for part of the period at issue, which could be the reason more extensive testing was not performed. However, the claimant obtained insurance coverage by January 2011, and testing was not performed at that time. In addition, lack of medical coverage does not explain the lack of reported clinical findings in Dr. Short's records." (AT 23; see also AT 427 [noting that, as of January 25, 2011, several months before Dr. Short's July 21, 2011 assessment, plaintiff had insurance coverage].)

1  full range of motion bilaterally in the upper and lower extremities, including the knees, ankles,
2  and feet; good tone bilaterally, with normal active motion; strength of 5/5 in all extremities; intact
3  sensation to light touch, pinprick, proprioception, and vibratory sense in the bilateral lower and
4  upper extremities; normal reflexes; and a normal gait, with heel and toe walking intact. (AT 259-
5  61.) Plaintiff's knees were very slightly loose, but Dr. Eriks noted that they were symmetrically
6  loose, stable, and without crepitation. (AT 261.) The x-ray of plaintiff's right knee ordered by
7  Dr. Eriks also revealed no significant findings. (AT 265.) She specifically observed that
8  "[n]eurologically, there is normal sensation in both feet, as well as normal knee and ankle
9  reflexes, which is consistent with no peripheral neuropathy." (AT 261.) Dr. Eriks opined that
10 plaintiff had no physical restrictions and did not require an assistive device for ambulation. (AT
11 261.) Because Dr. Eriks personally examined plaintiff and made independent clinical findings,
12 her opinion constitutes substantial evidence on which the ALJ was entitled to rely.

13         Additionally, the two state agency physicians who reviewed plaintiff's records in
14 November 2009 and April 2010, respectively, concluded that plaintiff's physical impairments
15 were not severe. (AT 21, 294, 345-46.) Those opinions are consistent with the opinion of
16 consultative examiner Dr. Eriks, who assessed no physical limitations. "Although the contrary
17 opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason
18 for rejecting a treating or examining physician's opinion, it may constitute substantial evidence
19 when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242
20 F.3d 1144, 1149 (9th Cir. 2001).

21         Even though the ALJ ultimately concluded that plaintiff was more limited than what Dr.
22 Eriks and the state agency physicians found, the ALJ was nonetheless entitled to rely on their
23 opinions, and especially the underlying clinical findings of Dr. Eriks, to discount Dr. Short's
24 severe assessment and to formulate plaintiff's RFC.[8]

---

[8] Plaintiff's argument that the ALJ was improperly attempting to "play doctor" lacks merit, because it is the ALJ's responsibility to formulate an RFC that is based on the record *as a whole*, and thus the RFC need not exactly match the opinion or findings of any particular medical source. See Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) ("It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains substantial evidence"); De Fletes v. Colvin, 2013 WL 1345724, at **2-5 (N.D. Cal. Mar. 31, 2013); Ceballos

Finally, the ALJ rationally found that Dr. Short's opinion appeared to be based primarily on plaintiff's subjective complaints. (AT 24.) See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible."). Plaintiff has not before this court specifically challenged the ALJ's analysis regarding plaintiff's own credibility. In any event, the record shows that the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's testimony concerning the extent of his symptoms and functional limitations. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

As discussed above, the ALJ found plaintiff's allegations of severe and disabling peripheral neuropathy to be inconsistent with the weight of the medical evidence, including the consultative examination of Dr. Eriks, the opinions of the state agency physicians, and the lack of supportive objective and clinical findings in plaintiff's treatment notes. (AT 23-24.) During a March 2011 hospitalization for a left peritonsillar abscess and diabetic ketoacidosis, a neurological examination was again normal, with sensation intact to light touch throughout. (AT 385.) Furthermore, as the ALJ observed, although the record contains evidence of some acute knee injuries/sprains, such injuries responded quickly to conservative treatment with no evidence of ongoing limitations. (AT 23.) A September 8, 2009 x-ray of plaintiff's right knee ordered by consultative examiner Dr. Eriks revealed no significant findings (AT 265), and an April 7, 2011 MRI of plaintiff's right knee, taken after a March 2011 injury, showed "[m]inimal knee joint effusion, otherwise unremarkable MRI of the right knee. No cruciate or meniscal tears are identified." (AT 409.) Notably, on May 5, 2011, about two months after the March 2011 injury, another one of plaintiff's treating providers, Dr. Shane Swanson, released plaintiff to regular activity and duties without restrictions effective that same day, and cleared plaintiff for travel on a family vacation to Mexico. (AT 408.) Also, even though plaintiff at the first hearing alleged

---

v. Astrue, 2011 WL 3847141, at *8 (E.D. Cal. Aug. 30, 2011). Here, the ALJ did not improperly substitute his own lay opinion for a medical opinion, but instead carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC. Indeed, plaintiff can hardly fault the ALJ for giving him the benefit of the doubt and assessing an RFC that is more favorable to plaintiff than most of the medical opinions in the record.

1   problems with his vision and having burst blood vessels in his eyes, a subsequent
2   ophthalmological examination ordered by the ALJ was essentially normal. (AT 366.)
3         While lack of medical evidence to fully corroborate the alleged severity of an impairment
4   cannot form the sole basis for discounting the plaintiff's subjective symptom testimony, it is
5   nevertheless a relevant factor for the ALJ to consider. Burch v. Barnhart, 400 F.3d 676, 680-81
6   (9th Cir. 2005).
7         Additionally, the ALJ properly considered that "[t]he record shows that the claimant has
8   poorly controlled diabetes, but he has admitted that he is generally non-compliant. In periods
9   when he has been more compliant, his glucose levels have improved and he has experienced
10  increased energy." (AT 22.) Plaintiff himself admitted to consultative examiner Dr. Eriks that he
11  had been "very bad with compliance with his medication" (AT 258), and Dr. Short's own
12  treatment notes are replete with references to plaintiff's failure to adequately self-monitor his
13  diabetes and take his medications. Such failure to follow treatment casts doubt on the sincerity of
14  plaintiff's testimony of pain and other diabetes-related symptoms. See Molina v. Astrue, 674
15  F.3d 1104, 1113-14 (9th Cir. 2012) ("We have long held that, in assessing a claimant's
16  credibility, the ALJ may properly rely on unexplained or inadequately explained failure…to
17  follow a prescribed course of treatment."). Moreover, a condition that can be controlled or
18  corrected by medication is not disabling for purposes of determining eligibility for benefits under
19  the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006);
20  Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler,
21  707 F.2d 439, 440 (9th Cir. 1983).
22        The ALJ further found some of plaintiff's activities to be inconsistent with his claim of
23  suffering from disabling impairments. (AT 23.) For example, plaintiff informed Dr. Eriks that he
24  lived with his grandparents as of September 8, 2009, and that plaintiff helped them around the
25  house by doing the yard work and the housecleaning, and did his own laundry. (AT 20, 23, 259.)
26  The ALJ also pointed out that plaintiff told Dr. Short in June 2010 that plaintiff was planning to
27  find work as a welder. (AT 21, 364.)
28  ////

All of these reasons, taken together, were sufficient to discredit plaintiff's testimony concerning the nature and extent of his symptoms and functional limitations. Given Dr. Short's significant reliance on plaintiff's subjective complaints, which were legitimately discounted by the ALJ, the ALJ also properly gave Dr. Short's opinion little weight.

Therefore, the court concludes that the ALJ provided several specific and legitimate reasons for discounting Dr. Short's opinion as to plaintiff's physical functional limitations. Furthermore, the court finds that substantial evidence in the record as a whole supports the ALJ's RFC assessment. Even if another ALJ could have interpreted the evidence in this case differently, the court defers, as it must, to the ALJ's reasonable and rational resolution of any inconsistencies and ambiguities.

V.  CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is denied.

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is granted.

3. Judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: August 22, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE